## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| RAEKWON WILLIAMS, | : | MOTION TO VACATE |
| Fed. Reg. No. 71124-019, | : | 28 U.S.C. §2255 |
| Movant, | : | |
| | : | CRIMINAL NO. |
| v. | : | 1:16-CR-427-AT-JKL-14 |
| | : | |
| UNITED STATES OF AMERICA, | : | CIVIL ACTION NO. |
| Respondent. | : | 1:23-CV-1579-AT-JKL |

## FINAL REPORT AND RECOMMENDATION

Movant Raekwon Williams has filed the instant *pro se* motion to vacate

pursuant to 28 U.S.C. §2255, and seeks to challenge the constitutionality of his

convictions and sentences in the Northern District of Georgia.  (Doc. 1715).[1]

## I.   PROCEDURAL HISTORY

A federal grand jury in the Northern District of Georgia indicted Movant and

thirty-one co-defendants – all of whom were members of the gang "Nine Trey

Gangsters" or "NTG" – and charged them with eighteen counts related to their

criminal gang activity.  (*See* Doc. 33).  Movant was charged with five of those

counts:  racketeering conspiracy ("RICO") in violation of 18 U.S.C. §§1961(1) and

(5), 1962(c), and 1963(a) (Count 1); conspiracy to commit a violent crime in aid of

---

[1]   Movant actually filed a motion for leave to file a "tardy" motion to vacate, and attached the §2255 motion thereto.  (Doc. 1715).  For ease of reference and discussion, I will refer to both motions simply as a §2255 motion to vacate.

racketeering ("VICAR"), that is, murder, in violation of 18 U.S.C. §1959(a)(5) (Count 6); conspiracy to distribute and possess with intent to distribute at least 500 grams of: methamphetamine, marijuana, Hydrocodone, Alprazolam (Xanax), Promethazine Hydrochloride with Codeine, and heroin in violation of 21 U.S.C. §§846, 841(a)(1), 841(b)(1)(A), 841(b)(1)(C), 841(b)(1)(D), 841(b)(2) and 841(b)(3) (Count 8); possession of marijuana with intent to distribute in violation of 21 U.S.C. §§841(a)(1), 841(b)(1)(D), and Section 2 of Title 18 of the United States Code (Count 10); and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. §§924(c)(1)(A) and Section 2 (Count 18).  (Doc. 33).

On September 25, 2018, Movant, represented by Dan Conaway, entered a negotiated guilty plea to RICO conspiracy (Count One) and possession of a firearm in furtherance of a drug trafficking crime (Count 18).   The District Court subsequently sentenced him to a net total of 128.5 months of imprisonment.[2]

Newly appointed counsel Scott Key filed a notice of appeal on behalf of Movant on April 5, 2019.  (Doc. 955).  Thereafter, Mr. Key notified Movant by letter dated July 22, 2019 that after reviewing the complete record he did not find any viable issues to raise on appeal, and would be filing, and did file, an *Anders* brief in

---

[2]    Specifically, Movant was sentenced to sixty-five and a half months for the RICO conspiracy and a consecutive sixty months for possession of a firearm.

the Eleventh Circuit.[3]  (Doc. 1 at 12).  On November 21, 2019, the Eleventh Circuit

found no arguable issues of merit and affirmed Movant's convictions and sentences.

(Doc. 1127).

On April 7, 2023,[4] Movant filed a §2255 motion to vacate his sentences to

challenge the constitutionality of his convictions and sentences in this Court

---

[3]     In *Anders v. California*, 386 U.S. 738, 744 (1967), the Supreme Court held
that if counsel determines that an appeal would be wholly frivolous, counsel should
notify the appellate court and request to withdraw.

[4]     The Government states that Movant filed the §2255 motion on April 11, 2023,
which was the date it was actually docketed.  (Doc. 1727 at 2).  Under the federal
"mailbox rule," however, a *pro se* §2255 motion is deemed to be filed on the date it
was delivered for mailing, and absent evidence to the contrary, the Court presumes
the prisoner delivers his pleading to prison officials on the day it was signed.  *See
Houston v. Lack*, 487 U.S. 266, 276 (1988) (holding petitioner's appeal was filed at
the time the petitioner delivered it to prison authorities); *Washington v. United
States*, 243 F.3d 1299, 1301 (11th Cir. 2001) (extending the prison mailbox rule to
§2255 motions).

Movant did not provide a date when he signed the pleadings; however, the
letter containing the pleadings was processed by the prison on April 7, 2023.  (Doc.
1715 at 14).  Under these circumstances, the date prison officials processed the
motion for mailing is the date that I will consider the §2255 motion was filed.  *See,
e.g., McCiskill v. Smith*, No. 3:90CV298/MCR/EMT, 2012 WL 612813, at *1 n.1
(N.D. Fla. Jan. 5, 2012) (looking first to date of complaint and date envelope was
postmarked before deeming case filed on date clerk received it); *Haggins v. Jackson*,
No. CV409-117, 2010 WL 1956546, at *1 (S.D. Ga. Apr. 15) (using postmarked
date where prisoner did not date the petition), *report and recommendation adopted*,
2010 WL 1956545 (S.D. Ga. May 13, 2010).

pursuant to *United States v. Davis*, __ U.S. __, 139 S. Ct. 2319 (2019).[5]  Respondent argues that Movant's claim is untimely and, in the alternative, is procedurally defaulted and barred by the appellate waiver in his plea agreement.  I agree on all points.

## II.    ANALYSIS

### A.    **The Motion to Vacate is Untimely.**

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal prisoners must file a 28 U.S.C. § 2255 motion to vacate within one year of the latest of four specified events:

(1)    the date on which the judgment of conviction becomes final;

(2)    the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

(3)    the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

---

[5]    In *Davis*, the Supreme Court held that 18 U.S.C. §924(c)(3)(B), otherwise known as the "residual clause" of the enhancement provisions contained in §924(c), was unconstitutionally vague.  *Davis*, 139 S. Ct. at 2236.

(4)    the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2255(f).

1.    <u>28 U.S.C. §2255(f)(1)</u>

Under §2255(f)(1), Movant had ninety days from the time the Eleventh Circuit affirmed Movant's convictions and sentences to file a petition for certiorari with the United States Supreme Court. *See* Sup. Ct. R. 13.1.  Since Movant did not seek a petition for certiorari, his convictions were final when the time for seeking such a petition expired, on February 19, 2020.[6]  *See Gonzalez v. Thaler*, 565 U.S. 134, 149-50 (2012) (stating that for petitioners who do not pursue direct review to the Supreme Court, "the judgment becomes final at the 'expiration of seeking such review' – when the time for pursuant direct review in [the Supreme Court] expires") (citation omitted).  Having not filed a petition for certiorari, Movant's convictions became final on February 19, 2020, and without tolling, he had until February 19, 2021, to file a §2255 motion.

---

[6]    Movant mistakenly states that the Eleventh Circuit issued its order affirming his convictions and sentences on November 19, 2019, despite that its order is dated November 21, 2019.  (Doc. 1715 at 3).  Even more puzzling, although ninety days from the Eleventh Circuit's decision was February 19, 2020, Movant states that the ninety-day period ended one day shy of one year later, that is, on February 18, 2021.  According to Movant, therefore, he had until February 17, 2022, to file a §2255 motion instead of by the correct expiration date more than one year earlier.

2.    28 U.S.C. §2255(f)(3)

To the extent that Movant relies on *Davis* pursuant to §2255(f)(3), *Davis* is, in fact, a new constitutional rule that applies retroactively to cases on collateral review. *In re Hammoud*, 931 F.3d 1032, 1039 (11th Cir. 2019). *Davis* came out on June 24, 2019. *Davis*, 139 S. Ct. 2319. Thus, under §2255(f)(3), Movant had one year, or until June 24, 2020, to file a §2255 motion. But Movant did not file the §2255 motion until almost three years later on April 7, 2023. As a result, even under §2255(f)(3), the instant §2255 motion is untimely.

**B.    Movant is not Entitled to Equitable Tolling.**

The AEDPA's one-year limitation period may be equitably tolled if a movant shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Borgesano v. United States*, No. 20-11453, 2021 WL 2879696, at \*5 (11th Cir. July 9, 2021) (per curiam) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)). To be entitled to equitable tolling a movant must show that he has been pursuing his rights diligently, *Lawrence v. Florida*, 549 U.S. 327, 336 (2007), and a movant "bears the difficult burden of showing specific facts to support his claim of extraordinary circumstances and due diligence." *Mazola v. United States*, 294 F. App'x 480, 482 (11th Cir. 2008); *see also Brown v. Barrow*, 512 F.3d 1304, 1307 (11th Cir. 2008) (per curiam); *Wade v. Battle*, 379 F.3d 1254, 1265 (11th Cir. 2004)

6

(per curiam); *Dodd v. United States*, 365 F.3d 1273, 1282 (11th Cir. 2004). "Equitable tolling 'is an extraordinary remedy limited to rare and exceptional circumstances' and typically should be 'applied sparingly.'" *Clemons v. Comm'r, Ala. Dep't of Corr.*, 967 F.3d 1231, 1241 (11th Cir. 2020) (quoting *Cadet v. Fla. Dep't of Corr.*, 853 F.3d 1216, 1221 (11th Cir. 2017)). And "mere conclusory allegations are not sufficient to raise the issue." *Doe v. United States*, 469 F. App'x 798, 800 (11th Cir. 2012) (per curiam). Movant has not met his burden of showing that equitable tolling should apply.

To that end, Movant argues that he is entitled to equitable tolling because: (1) *Davis* was decided while his case was on appeal and he relied on appellate counsel's advice that there were no viable issues for appeal; (2) Movant was in his twenties had only completed high school, and also relied heavily on plea counsel's advice "and strong suggestion" that he accept the plea agreement; (3) Movant was on lockdown from March 2020 to December 2021 because of the COVID-19 pandemic and had no access to the law library; and (4) when he arrived at his current facility in January 2022, he was placed on quarantine until December 2022 under COVID-19 protocol, at which time he finally had access to the law library and discovered the *Davis* issue. (Doc. 1715 at 5). None of these events, however, constitutes extraordinary circumstances to warrant equitable tolling.

In point of fact, before the COVID-19 pandemic it was settled law in the Eleventh Circuit that lockdowns, solitary confinement, lack of access to legal papers or the law library, and/or transfers between prisons do not constitute extraordinary circumstances to warrant equitable tolling.  *See, e.g., Jackson v. McLaughlin*, No. 17-11474-B, 2017 WL 4844624, at *2 (11th Cir. July 12, 2017) ("[R]estricted access to a law library, lock-downs, and solitary confinement do not qualify as extraordinary circumstances to warrant equitable tolling."); *Paulcin v. McDonough*, 259 F. App'x 211, 213 (11th Cir. 2007) (per curiam) (holding no extraordinary circumstances where the petitioner claimed he was transferred and deprived access to his legal papers and the law library); *Dodd v. United States*, 365 F.3d 1273, 1283 (11th Cir. 2004) ("[L]ockdowns and periods in which a prisoner is separated from his legal papers are not 'extraordinary circumstances' in which equitable tolling is appropriate.").  That law does not change simply because of the pandemic.  *See Powell v. United States*, No. 21-12432-J, 2022 WL 2811987, at *1 (11th Cir. Feb. 8, 2022) ("Under this Court's precedents, lockdowns and similar limitations imposed because of the COVID-19 pandemic were not extraordinary circumstances which by themselves justify equitable tolling. . . ."); *see also Rush v. Sec'y, Fla. Dep't of Corr.*, No. 21-10218-C, 2021 WL 3134763, at *1 (11th Cir. June 22, 2021) ("He also could not show extraordinary circumstances, as his circumstances were not different than any other prisoner attempting to access legal resources, as they all were subject to

COVID-19 protocols."); *Shaw v. United States*, No. 2:18-cv-43, 2021 WL 3205067, at *3 (S.D. Ga. June 24, 2021) (citing cases in the Eleventh Circuit that have held that lockdown status because of the pandemic does not present extraordinary circumstances); *Crist v. United States*, No. 16-cr-4356-JHC-KBM, 2022 WL 1442968, at *3 (D.N.M. May 6, 2022) (stating that the "law has not changed in the context of the pandemic" that a lockdown that impedes access to relevant law, lack of library access or to legal inmate help do not constitute extraordinary circumstances for equitable tolling to apply), *appeal filed*, No. 22-2090 (10th Cir. Aug. 8, 2022).

Likewise, the fact that Movant relied upon appellate counsel's conclusion that he had no viable claims also does not entitle him to equitable tolling, as the Eleventh Circuit conducted its own independent review of the record and also found that Movant had no arguable issues of merit. (Doc. 1127). What's more, even if appellate counsel had been mistaken, "'attorney error, however egregious,' is not enough for equitable tolling." *Cadet*, 853 F.3d at 1227 (quoting *Maples v. Thomas*, 565 U.S. 266, 282 (2012)).

Regardless, even if Movant had demonstrated extraordinary circumstances, he provides no allegations whatsoever that he was diligently pursuing his rights. In particular, Movant does not discuss any efforts he made to ascertain whether Mr. Key may have been wrong as to the viability of an appeal or collateral attack from

when *Davis* was decided in June 2019 or after Mr. Key sent his letter to Movant in July 2019, until the time when the COVID-19 lockdowns began in March 2020. Nor does Movant indicate that he was deprived of any writing implements during the lockdowns, or that at any time during the limitation period he attempted to timely file his §2255 motion and was thwarted thereby – a requirement to demonstrating that he acted with diligence. *See, e.g., Dunn v. Sec'y, Dep't of Corr.*, 808 F. App'x 778, 783 (11th Cir. 2020) (per curiam) (affirming finding that petitioner was not diligent because she did not, *inter alia*, "undert[ake] any action to timely file the motion that would suggest reasonable diligence"); *Myers v. Allen*, 420 F. App'x 924, 927 (11th Cir. 2011) (per curiam) ("Myers's failure to allege that he took any steps to attempt to advance or monitor his case is fatal to his equitable tolling argument."); *Bell v. Sec'y, Dep't of Corr.*, 248 F. App'x 101, 104 (11th Cir. 2007) (per curiam) (affirming dismissal of petition as untimely and finding that equitable tolling did not apply because there was no record evidence that petitioner attempted to do anything with regard to a habeas petition before the limitation period expired or show that prison officials thwarted his efforts). Thus, equitable tolling is not warranted, and the instant §2255 motion is untimely.

## C.   Movant's Claim is Procedurally Defaulted.

Movant's *Davis* claim also is procedurally defaulted. "A claim is procedurally defaulted, such that the prisoner cannot raise it in a collateral

proceeding, when a defendant could have raised an issue on direct appeal but did not do so." *Hill v. United States*, 569 F. App'x 646, 647 (11th Cir. 2014) (per curiam); *see also Black v. United States*, 373 F.3d 1140, 1142 (11th Cir. 2004) ("Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a 28 U.S.C. §2255 challenge.").

The movant can "avoid the procedural bar by establishing that either of the following exceptions applies:  (1) cause and prejudice, or (2) a miscarriage of justice based on actual innocence."  *Hill*, 569 F. App'x at 648.  "[T]o show cause for procedural default [a §2255 movant] must show that some objective factor external to the defense prevented [the movant] or his counsel from raising [the] claims on direct appeal and that this factor cannot be fairly attributable to [the movant's] own conduct."  *Lynn v. United States*, 365 F.3d 1225, 1235 (11th Cir. 2004) (per curiam). "Actual prejudice means more than just the possibility of prejudice; it requires that the error worked to [the movant's] actual and substantial disadvantage[.]"  *Ward v. Hall*, 592 F.3d 1144, 1179 (11th Cir. 2010).  To demonstrate a miscarriage of justice based on actual innocence, the movant must demonstrate that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Lynn*, 365 F.3d 1234-35 (internal quotation marks and citations omitted).  And a movant claiming that he is actually innocent must show factual innocence rather than

legal innocence. *Rozzelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d 1000, 1012-15 (11th Cir. 2012) (per curiam).

Movant has not demonstrated that any of these exceptions exist. Insofar as Movant argues as cause that appellate counsel was ineffective for failing to raise the §924(c) issue based on *Davis*, that argument fails.[7] *See, e.g., Granda v. United States*, 990 F.3d 1272, 1286-88) (11th Cir. 2021) (finding appellate counsel's failure to raise claim that §924(c) was vague under *Davis*, *inter alia*, did not constitute cause for procedural default).[8] Nor has Movant presented any new, reliable evidence that he is factually innocent, and he could not do so given his guilty plea. *See Blanc v. United States*, No. 17-12394-A, 2017 WL 11812993, at *2 (11th Cir. July 12, 2017) (rejecting argument that actual innocence excused procedural default because movant had not shown factual innocence and could not do so in light of his guilty plea). Thus, Movant's *Davis* claim is procedurally barred.

---

[7]   To the degree that I could construe Movant's allegations as raising a stand-alone ineffective assistance of counsel claim [Doc. 1715 at 7-8], any such claim would be untimely under §2255(f)(1).

[8]   Because I find Movant has failed to show cause, I do not need to reach the prejudice issue. *See, e.g., Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982) ("Since we conclude that these respondents lacked cause for their default, we do not consider whether they also suffered actual prejudice."); *Palmes v. Wainwright*, 725 F.2d 1511, 1525-26 (11th Cir. 1984) ("Because appellant has made no showing of cause we hold that this issue too is barred. We do not examine the prejudice, if any, that resulted from the failure to raise these issues because the *Sykes* standard for relief from its rule is in the conjunctive. Having failed to show 'cause,' appellant necessarily fails the conjunctive.").

**D.**    **The Appellate Waiver Prohibits Movant from Raising the *Davis* Claim.**

Finally, Movant's plea agreement provides that Movant may not collaterally attack his convictions and sentences – including through a §2255 motion – on any ground.  (Doc. 749-1 at 14).  And despite Movant's statement that counsel "strongly suggested" he take the plea, his testimony during the plea colloquy – which carries a presumption of truth (*see Blackridge v. Allison*, 431 U.S. 63, 74 (1977)) – indicates that he did, in fact, enter into the plea knowingly and voluntarily.

Indeed, during the plea hearing Movant swore that:  he had discussed all of his concerns with counsel and family members, he was satisfied and there were no remaining issues he needed to discuss; he understood the plea agreement; and no one had made any promises that influenced his decision to enter the guilty plea other than the promises contained in the plea agreement. (Doc. 865 at 3-4, 32-34).  Movant also swore that he understood the waiver of his appellate and collateral rights.  (*Id.* at 32).  Other than his self-serving statement that counsel "strongly suggested" that he enter into the plea, Movant has not brought forth any evidence to rebut the strong presumption of the veracity of his statements during the plea hearing and he therefore has failed to demonstrate that his plea was anything other than knowing and voluntary.  *Cf. Patel v. United States*, 252 F. App'x 970, 975 (11th Cir. 2007) (per curiam) (finding movant's allegations that his plea was not voluntary were in direct conflict with his statements during the plea colloquy, he produced no evidence to

challenge the veracity thereof, and his self-serving statements were insufficient to demonstrate that his plea was not voluntary).

Because Movant knowingly and voluntarily entered into the plea agreement containing the appellate waiver, that appellate waiver is valid and enforceable. *See United States v. Arce*, 718 F. App'x 931, 933-34 (11th Cir. 2018) (per curiam); *United States v. Santiesteban*, 587 F. App'x 548, 551 (11th Cir. 2014) (per curiam); *United States v. Wilson*, 445 F. App'x 203, 207 (11th Cir. 2011) (per curiam); *United States v. Ramos*, 433 F. App'x 893, 895 (11th Cir. 2011) (per curiam); *Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005); *United States v. Bushert*, 997 F.2d 1343, 1350 (11th Cir. 1993). "[O]ne of the keys to enforcing a sentence appeal waiver is that the defendant knew he had a 'right to appeal his sentence and that he was giving up that right.'" *Bushert*, 997 F.2d at 1350 (citations omitted). In order to prevail on an argument to enforce a waiver, the Government must show that either "(1) 'the district court questioned the [movant]' about the waiver; or (2) the record makes clear 'that the [movant] otherwise understood the full significance of the waiver.'" *Wilson*, 445 F. App'x at 207 (quoting *Bushert*, 997 F.2d at 1351); *Ramos*, 433 F. App'x at 895-96; *United States v. Johnson*, 541 F.3d 1064, 1066 (11th Cir. 2008). In this case, the Government has demonstrated both. Consequently, Movant's *Davis* claim is precluded by the waiver. *See King v. United States*, 41 F.4th 1363, 1365 (11th Cir. 2022) (finding appellate waiver foreclosed *Davis* claim);

14

*accord Daniels v. United States*, Criminal Action No. 1:15-CR-0437-LMM, 2022 WL 4378691, at *2 (N.D. Ga. Sept. 21, 2022), *certificate of appealability denied*, No. 22-13509 (11th Cir. July 6, 2023).

### III.   CONCLUSION

Based on the foregoing reasons, **IT IS RECOMMENDED** that Raekwon Williams' motion to vacate his sentence [Doc. 1715] be **DENIED WITH PREJUDICE**.

### IV.   CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing §2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   28 U.S.C. §2253(c)(2) provides that a certificate of appealability ("COA") may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."   In order for the certification requirement to fulfill its function of weeding out frivolous appeals, a court should not automatically issue a COA; rather, the applicant must prove "something more than the absence of frivolity" or "the existence of mere 'good faith' on his or her part."   *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (citations omitted).

Movant need not prove, however, that some jurists would grant the §2255 motion. *See id.* "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *See Lamarca v. Secretary, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009) (citing *Miller-El*, 537 U.S. at 325). In other words, Movant need only demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Based on the foregoing discussion, reasonable jurists would not find "debatable or wrong" my determination that Movant's claims are untimely, procedurally defaulted, and/or barred by the appellate waiver. *See Slack*, 529 U.S. at 484.

Accordingly, **IT IS FURTHER RECOMMENDED** that a COA be denied.

The Clerk is **DIRECTED** to terminate the reference to the undersigned Magistrate Judge.

**SO ORDERED** this 15th day of August, 2023.

JOHN K. LARKINS III
UNITED STATES MAGISTRATE JUDGE